**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHRISTOPHER W.,

                Plaintiff,

    v.                               3:23-CV-1106
                                        (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**APPEARANCES:**                         **OF COUNSEL:**

LACHMAN & GORTON           PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 East Main Street
P.O. Box 89
Endicott, New York 13761

U.S. SOCIAL SECURITY ADMIN.     GEOFFREY M. PETERS, ESQ.
OFFICE OF THE GENERAL COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

1

## **MEMORANDUM-DECISION AND ORDER**[1]

Plaintiff, Christopher W., brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 9, 11, & 12.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born in 1978, has past work experience in construction, and reported that he completed ninth grade.  Dkt. No. 8, Admin. Tr. ("Tr."), pp. 207, 210, 30.  Plaintiff alleges disability based on diabetic neuropathy and diabetes which caused him to undergo an above-the-knee amputation of his right leg.  Tr. at p. 219.  In November 2020, Plaintiff applied for supplemental security income benefits, alleging a disability onset date of July 18, 2017.  Tr. at pp. 200, 51.  Plaintiff's application was initially denied on May 11, 2021, and upon reconsideration on November 4, 2021, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 7 & General Order 18.

80, 108, 116.  Plaintiff subsequently appeared and testified at a hearing before ALJ Jeremy G. Eldred on June 17, 2022.  Tr. at pp. 24-46.  On June 30, 2022, ALJ Eldred issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 10-19.  On July 13, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-6.

### B.  The ALJ's Decision

In his decision, the ALJ first found that Plaintiff has not engaged in substantial gainful activity since November 16, 2020.  Tr. at p. 13.  Second, the ALJ found that Plaintiff's above the knee amputation of the right leg and type 1 diabetes were severe impairments.  Tr. at p. 13.  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1.  Tr. at p. 13.  Fourth, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work" with the following additional limitations:

> he is unable to push and/or pull with the lower extremities; can never climb ladders, ropes, or scaffolds; can climb ramps or stairs occasionally; can balance, stoop, kneel, crouch, or crawl occasionally; and must avoid exposure to hazardous working conditions, such as work done at unprotected heights and work done in proximity to dangerous moving machinery.

Tr. at p. 13.

3

Next, the ALJ found that Plaintiff has no past relevant work, Plaintiff was a "younger individual" on the alleged disability onset date, he had a limited education, and job skill transferability was a non-issue because Plaintiff has no past relevant work. Tr. at p. 17. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform several jobs existing in "significant numbers in the national economy," including document preparation clerk, addresser, and call out operator. Tr. at p. 18. Finally, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. Tr. at p. 19.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

4

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).  The five-step process asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

### III.  ANALYSIS

#### A. Limitations Not Established by Plaintiff

##### 1. *Plaintiff's Use of a Hand-held Assistive Device*

Plaintiff first alleges that the ALJ's RFC determination is not supported by substantial evidence because he concluded that Plaintiff was able to perform the walking and standing requirements of sedentary work without the use of a hand-held assistive device.  Pl.'s Mem. of Law at p. 3.  "Social Security Ruling 96-9p recognizes that the use of a hand-held assistive device, in some instances, may significantly erode the occupational base for individuals who must use such devices."  *James L. v. Comm'r of Soc. Sec.*, 2023 WL 5662790, at *3 (W.D.N.Y. Sept. 1, 2023).

For a plaintiff to demonstrate error under SSR 96-9p, use of a hand-held assistive device must be medically required.  *Dahl v. Comm'r of Soc. Sec.*, 2013 WL 5493677, at *5 (N.D.N.Y. Oct. 1, 2013).  Furthermore, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."  SSR 96-9p.  It is the claimant's burden to

establish medical necessity. *Gordon v. Colvin*, 2015 WL 4041729, at *3 (N.D.N.Y. July 1, 2015). Here, the ALJ concluded that "the claimant has not established that use of a hand-held assistive device has been a medical requirement for him for a continuous period of 12 months." Tr. at p. 15. The ALJ further explained the requirements set forth by SSR 96-6p and concluded that the record includes no such medical documentation. Tr. at p. 15.

This Court has reviewed the record in its entirety and concludes that it "lacks an opinion or finding from any medical provider concluding the cane [or walker are] medically necessary." *Caridad H. v. Comm'r of Soc. Sec.* 2019 WL 3253228, at *6 (N.D.N.Y. July 19, 2019). Plaintiff seeks to establish the necessity of the assistive devices first by citing to a March 2022 clinic note which lists Plaintiff's medical equipment. Tr. at p. 310. The note states "he uses a walker to ambulate, he has a prosthetic for his right leg; he has a rolling walker; and a wheelchair; shower chair." Tr. at p. 310. Plaintiff claims "this alone undermines the ALJ's conclusion . . . ." Pl.'s Mem. of Law at p. 4. However, courts in this circuit have established that a physician's observation that a claimant merely uses a hand-held assistive device "is not medical evidence establishing the need for" the device. *Hoke v. Colvin*, 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015).

7

Additionally, Plaintiff attempts to support his argument by referencing an October 2021 Report of Contact which lists Plaintiff's own statements about his condition. Tr. at p. 274. In that call report, Plaintiff informed the DDS representative that he still used a walker for longer ambulation but had been using a cane for most of his ambulation of shorter distances. Tr. at p. 274. Plaintiff claims that this report contradicts the ALJ's conclusion, but again, this report does not satisfy Plaintiff's burden of proving that the hand-held assistive devices are medically required. This Court has held that relying on one's own testimony about the need for an assistive device without citing to any medical evidence of record is insufficient to establish medical necessity. *Gordon v. Colvin*, 2015 WL 4041729, at *4. The Report of Contact is merely a phone call in which Plaintiff informed the representative of his progress. Tr. at p. 274. Therefore, Plaintiff is citing his own account of his need for the devices.

Since Plaintiff did not establish the medical necessity of his cane or walker, the ALJ was under no legal obligation to incorporate that use into his RFC determination. It is only "[o]nce medical need for an assistive device has been established, [that] the ALJ must incorporate that device into the RFC." *Vanever v. Berryhill*, 2018 WL 4266058, at *3 (W.D.N.Y. Sept. 6, 2018). The ALJ was only required to engage in an inquiry about whether the use of an assistive device was medically necessary, and where substantial evidence supports the ALJ's finding that it was not, there is not reversable

error. *See Hoke v. Colvin*, 2015 WL 3901807, at *15.  The ALJ reviewed the record in its entirety, considering the medical opinions and treatment notes of record, as well as Plaintiff's subjective complaints and determined that Plaintiff had not proffered the medical documentation required to establish the medical necessity of a hand-held assistive device.  Since Plaintiff has not carried his burden regarding this issue, he "cannot demonstrate any legal error under SSR 96-9p."  *Caridad H. v. Comm'r of Soc. Sec.*, 2019 WL 3253228, at *7.

### 2. Plaintiff's Need to Elevate Leg

Plaintiff next alleges that the ALJ erred by failing to account for his need to elevate his stump.  Pl.'s Mem. of Law at p. 15.  Specifically, Plaintiff states that his need to elevate his stump is "a clear medical requirement" that could have impacted the job base available to Plaintiff.  Pl.'s Mem. of Law at p. 15.  To support his assertion, Plaintiff references his own testimony that there are periods throughout the day that he elevates his stump.  Tr. at p. 42.  Likewise, Plaintiff cites to a discharge note immediately following Plaintiff's amputation, which instructed Plaintiff to elevate his feet.  Tr. at p. 293.  This evidence is insufficient to demonstrate any error on the ALJ's part.

First, the ALJ is not required to "explicitly address every piece of evidence in the record.  *Natasha C. v. Comm'r of Soc. Sec.*, 2022 WL 17978835, at *6 (N.D.N.Y. Dec. 28, 2022).  While Plaintiff references his own testimony, "the record is otherwise devoid

of any limiting effects created by this stated need." *Tricia W. v. Comm'r of Soc. Sec.*, 2023 WL 4471661, at *4 (N.D.N.Y. June 8, 2023).  In choosing not to address Plaintiff's subjective statements about his need to elevate his leg, the ALJ "reasonably relied on medical opinions that failed to indicate Plaintiff had any such limitation." *Id.*  An ALJ is entitled to consider both what the record does say and what it does not say.  *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983).   Neither Dr. Auerbach nor Dr. Periakaruppan stated that Plaintiff needed to elevate his stump.  Tr. at pp. 50-62, 64-78.

"Plaintiff's Motion in this Court . . . cites to no medical evidence suggesting a need on [his] part to regularly elevate [his] legs. . . . [He] cites no medical opinion noting a need for such limitation and none appears from the Court's review of the record." *Tricia W. v. Comm'r of Soc. Sec.*, 2023 WL 4471661, at *4.  The only other part of the record that Plaintiff cites to is a discharge note following his amputation.  Tr. at p. 15. Discharge notes alone do not constitute evidence of a continuing or permanent need for Plaintiff to elevate his leg more than a year after discharge.  *See White v. Comm'r of Soc. Sec.*, 2019 WL 4305005, at *7 (W.D.N.Y. Sept. 11, 2019).  In *White*, the court found the limitations stated in a discharge note were not intended to be permanent and that long-term limitations would generally be evidenced by follow-up appointments. *See id.*

10

Here, aside from the discharge note, the Court's review of the record does not show any medical opinion or treatment note indicating Plaintiff's continued need to elevate his stump.  Plaintiff bears the burden of proving a more restrictive RFC than that assessed by the ALJ.  *Cheryl T. v. Comm'r of Soc. Sec.*, 2021 WL 695100, at *5 (W.D.N.Y. Feb. 23, 2021).  Plaintiff's conclusory assertion that he still needs to elevate his stump more than a year after surgery, without pointing to any relevant treatment record or medical opinion, fails to meet that burden.

## C. ALJ's RFC Determination

Next, Plaintiff alleges that the ALJ erred in his RFC determination because there is not substantial evidence to support the finding that Plaintiff can perform the walking and standing requirements of sedentary work. *See generally* Pl.'s Mem. of Law. Sedentary work generally requires that an individual stands or walks no more than two hours during the course of an eight-hour workday.  SSR 83-10.  Plaintiff primarily takes issue with the ALJ's reference to Plaintiff's daily activities, Pl.'s Mem. of Law at p. 8, and the ALJ's reliance on the state agency medical consultant opinions, Pl.'s Mem. of Law at p. 9-14; each will be addressed below.

### 1. ALJ's Reliance on Activities of Daily Living

Plaintiff claims that the ALJ committed legal error by relying on Plaintiff's daily activities to determine the length of time Plaintiff was able to stand.  Pl.'s Mem. of Law

at p. 8.  The Court disagrees with this interpretation of the decision.  The ALJ properly considered Plaintiff's daily activities as part of his required assessment of Plaintiff's subjective complaints.  Once an ALJ has determined that the medical evidence shows an impairment that could "reasonably be expected to produce the pain or other symptoms alleged," the ALJ must "evaluate the intensity, persistence, or functionally limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work."  *Thomas F. W. v. Comm'r of Soc. Sec.*, 2022 WL 22329498, at *3 (N.D.N.Y. Sept. 20, 2022) (internal quotations and citations omitted).  "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the claimant's statements considering the details of the case record, including the claimant's daily activities."  *Id.*

Here, the ALJ found that the medical evidence showed that Plaintiff underwent an above-the-knee amputation due to peripheral arterial disease of the right leg with gangrene which could reasonably be expected to produce Plaintiff's symptoms.  Tr. at pp. 14-15.  However, the ALJ concluded that Plaintiff's statements about the intensity, persistence, or functionally limiting effects of these symptoms are not entirely consistent with the medical and other record evidence.  Tr. at p. 14.  The ALJ carefully explained his consideration of the case record to comply with his above-mentioned obligations and

to show how Plaintiff's statements were not entirely consistent with the record.  *See* Tr. at pp. 14-17.

The ALJ considered the October 6, 2021, Report of Contact, Tr. at p. 15, Plaintiff's medical records, Tr. at p. 15, the physical examination findings, Tr. at p. 16, the medical opinions in the record, Tr. at p. 15, and Plaintiff's activities of daily living. Tr. at p. 16.  The Court believes that "the ALJ considered Plaintiff's daily activities, and other evidence in the record, to evaluate the intensity, persistence, and limiting effects of his symptoms" which complies with the regulatory framework and does not constitute legal error. *Thomas F. W. v. Comm'r of Soc. Sec.*, 2022 WL 22329498, at *3.  Thus, while Plaintiff is alleging that his daily activities such as showering, dressing, watching television, socializing with friends, and doing light cleaning around the house do not prove he "can stand/walk up to 2 hours in an 8-hour period," the ALJ relied on the entire record to arrive at his conclusion.  Pl.'s Mem. of Law at p. 8.

Plaintiff also overstates the ALJ's reliance on these activities.  Courts have routinely affirmed RFC determinations where an ALJ finds that daily activities such as Plaintiff's indicate a continued ability to perform a "varied amount of activities throughout the day" which is consistent with the ability to perform sedentary work. *See, e.g.*, *Alford v. Colvin*, 2013 WL 6839554, at *14 (N.D.N.Y. Dec. 27, 2013).  As will be discussed below, the medical opinions of record that the ALJ found persuasive support

13

the ALJ's determination regarding Plaintiff's daily activities, and there was, therefore, substantial evidence to support the RFC determination.

### 2. ALJ's Consideration of Medical Opinions

Plaintiff also alleges that the ALJ improperly assessed the medical opinions in the record by failing to adequately explain how he considered the supportability and consistency of each. Pl.'s Mem. of Law at p. 10. "The revised regulations for evaluating opinion evidence place substantial emphasis on both supportability and consistency and require the ALJ to explain the analysis of each of those factors. *Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 621 (S.D.N.Y. 2022) (citing 20 C.F.R. § 404.1520c(b)(2)). "To analyze supportability, the ALJ must conduct 'an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion.'" *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022) (quoting *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)). The persuasiveness of a medical opinion from a medical source or prior administrative finding depends on its relevancy to the objective medical evidence and the source's supporting explanations. 20 C.F.R. § 404.1520c(c)(1). "On the other hand, to analyze consistency, the ALJ must conduct 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.'" *Ayala v. Kijakazi*, 620 F. Supp. 3d at 30 (quoting *Vellone v. Saul*, 2021 WL 319354, at *6).

An ALJ's failure to explain the supportability and consistency factors when assessing the persuasiveness of a medical opinion does not automatically warrant remand. *Wanda N. v. Comm'r of Soc. Sec.*, 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022).  If the ALJ's "consideration of the relevant factors can be gleaned from the ALJ's decision as a whole," remand is not necessary. *John L. M. v. Kijakazi*, 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022).

The Court finds that ALJ Eldred sufficiently explained his assessment of the medical opinions at issue.  In his decision the ALJ stated:

> [t]he opinions of A. Auerbach, M.D. and A. Periakaruppan, M.D. are both persuasive. These opinions are both supported by a detailed narrative rationale, and these rationales cite supporting objective medical evidence and other evidence from the record. I also find that the opinions of Dr. Auerbach and Dr. Periakaruppan are consistent with other substantial evidence in the record, such as the medical evidence noted above which states that the claimant is doing well and that the claimant's pain and diabetes are under control.

Tr. at p. 16.  The Second Circuit recently affirmed an ALJ's use of substantially similar language as sufficiently explaining how the ALJ considered the supportability and consistency factors.  *See Porteus v. O'Malley*, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024).  In *Porteus*, the court affirmed the ALJ's supportability explanation which stated that the assessment was "supported by a detailed narrative rationale, which cite[d] supporting mental status examination findings and other evidence from the record."  *Id.*  Likewise, the court found the explanation of the ALJ's consistency assessment sufficient

15

when the ALJ stated that the opinions were "consistent with the record as a whole, including the evidence described above . . . ." *Id.*  ALJ Eldred provided essentially the same explanations in his decision regarding the persuasiveness of the state agency medical consultants' opinions.  Tr. at p. 16.  Therefore, the Court believes the ALJ sufficiently explained the supportability and consistency factors.

### 3. Substantial Evidence Supporting Medical Opinions

Beginning with Dr. Auerbach's opinion, Plaintiff alleges that Dr. Auerbach cited no supporting evidence for his conclusion that there is no reason Plaintiff would not be able to wear prosthesis and therefore the opinion does not constitute substantial evidence.  Pl.'s Mem. of Law at p. 11.  However, this claim is meritless.  Dr. Auerbach specifically supported his conclusion with exam findings. Tr. at p. 59.  In his narrative rationale, Dr. Auerbach noted that Plaintiff's stump was well healed, his skin was within normal limits, there were no remarkable exam findings aside from the amputation, pulses were physiologic and equal, and there were no neuropathic neurologic findings.  Tr. at p. 59.  Based on these exam findings, Dr. Auerbach noted that nothing should interfere with Plaintiff's ability to wear prosthesis.  Tr. at p. 59.

Plaintiff also argues that Dr. Periakarrupan's opinion was similarly flawed and therefore did not provide substantial support for the ALJ's RFC determination.  Pl.'s Mem. of Law at p. 12.  Dr. Periakarrupan provided a thorough narrative rationale in

which he relied upon his exam findings and the Report of Contact discussed above.  Tr. at p. 75.  From this evidence, he concluded that Plaintiff could perform sedentary work, and "it would be reasonable to expect that 12 months post amputation, with use of prosthesis, claimant would be capable of . . ." standing and/or walking two hours during the eight-hour workday.  Tr. at p. 75.

Plaintiff also claims that Dr. Auerbach's opinion regarding Plaintiff's ability to walk/stand is not consistent with the longitudinal evidence, and it therefore does not constitute substantial evidence.  Tr. at p. 12.  Again, this claim has no merit.  As the ALJ mentioned, Dr. Auerbach's opinion is consistent with Dr. Jenouri's exam notes that Plaintiff's stump was well healed, and he had 4/5 strength in the lower extremities and 5/5 strength in the rest of his extremities.  Tr. at p. 277.  Also, as the ALJ noted and as discussed above, none of the medical opinions of record discuss a need for a walker or cane.  Tr. at p. 15, 17.

While Plaintiff seeks to question the opinions of the medical examiners, he is essentially saying that the ALJ should have substituted his own lay opinion for that of the medical examiner, which the ALJ was prohibited from doing.  *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  The ALJ properly applied the standard for considering medical opinions, and while Plaintiff may disagree with those opinions, the ALJ was entitled to weigh the evidence before him and make an RFC finding consistent

with it.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Both doctors opined that Plaintiff could perform sedentary work, and the ALJ properly evaluated these opinions and found them persuasive.  Tr. at p. 16.  That assessment is also supported by the treatment notes of record and the Report of Contact, as the ALJ noted.  Tr. at p. 16. Therefore, the ALJ's reliance on the opinions of Dr. Auerbach and Dr. Periakarrupan was proper and supported by substantial evidence.

### D. ALJ's Step 5 Findings

Finally, Plaintiff asserts that the ALJ erred in finding that the Defendant sustained his step 5 burden.  Pl.'s Mem. of Law at p. 15.  Specifically, Plaintiff alleges that the vocational expert's testimony cannot constitute substantial evidence because it is based on a hypothetical that failed to account for Plaintiff's need to use an assistive device to walk and his need to elevate his leg.  Pl.'s Mem. of Law at p. 16.  As mentioned above, at step 5 of the ALJ's sequential evaluation to determine disability, the ALJ must determine "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience."  *McIntyre v. Colvin*, 758 F.3d at 150.   At this step, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin.,* 683 F.3d 443, 445 (2d Cir. 2012).  In making his determination, an ALJ is entitled to rely upon a hypothetical he gives to a vocational

expert so long as it "fully encompasses the claimant's limitations." *Niles v. Astrue*, 32 F. Supp. 3d 273, 288 (N.D.N.Y. 2012).

Here, the ALJ asked the vocational expert the following hypothetical:

Can you assume an individual who has the residual functional capacity to perform a full range of work at the sedentary exertional level. However, assume this individual is unable to push or pull with the lower extremities. Can never climb ladders, ropes, or scaffolds. Can climb ramps or stairs occasionally. Can balance, stoop, kneel, crouch, or crawl occasionally. Also assume the person must avoid exposure to hazardous working conditions such as work done at unprotected heights and work done in proximity to dangerous moving machines. Are there any unskilled jobs in the national economy such a person could perform?

Tr. at pp. 40-41. The vocational expert responded that such a person could:

be a document preparation clerk. This is DOT #249.587-018. This is SVP 2. It's unskilled, sedentary exertion level, approximately 20,000 jobs nationwide. I also have addresser or addressing clerk. DOT #209.587-010, SVP 2, unskilled, sedentary exertion level, approximately 23,000 jobs nationwide. And finally, I have a call out operator, DOT #237.367-014. This is also SVP 2, unskilled, sedentary. It's approximately 24,000 jobs nationwide.

Tr. at p. 41. The hypothetical the ALJ posed to the vocational expert encompasses all the limitations included in the ALJ's RFC, which as discussed above, was supported by substantial evidence including Plaintiff's daily activities, treatment notes, and the medical opinions from the State agency medical consultants.

Plaintiff alleges that the ALJ's reliance on the vocational expert's answer was erroneous because the hypothetical did not include his need for a hand-held assistive

device and did not include his need to elevate his leg throughout the day.  Tr. at p. 16. But, as has already been established, Plaintiff did not meet his burden of establishing either of those limitations.  "The ALJ properly declined to include in his hypothetical question any limitations that he had reasonably rejected."  *Priel v. Astrue*, 453 F. App'x 84, 87-88 (2d Cir. 2011).  Therefore, the ALJ was entitled to rely on the testimony of the vocational expert, and the ALJ did not err because the hypothetical included all the limitations that were demonstrated by substantial evidence in the record.  *See Walker v. Colvin*, 2013 WL 5434065, at *12 (N.D.N.Y. Sept. 27, 2013).

## IV.  CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-

Decision and Order on the parties.

Dated:  August 16, 2024
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

21